IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 JUL 25 PM 3: 34

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

GARY C. HANEY,                    )
                                  )
          Plaintiff,              )
                                  )
vs.                               )     No. 03-2530-B/V
                                  )
UNITED STATES CUSTOMS SERVICE,    )
                                  )
          Defendant.              )
                                  )

ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION
ORDER VACATING DISMISSAL ORDER AND JUDGMENT
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

Plaintiff Gary C. Haney filed a pro se complaint pursuant
to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq.,
on July 21, 2003 and paid the civil filing fee.  The Court issued
an order on November 4, 2003 authorizing the clerk to issue
summonses to the plaintiff and directing the clerk to serve the
defendant as the United States Customs Service ("USCS").[1] The
defendant answered the complaint on January 20, 2004 and filed a
summary judgment motion on October 29, 2004, along with a

_____

[1]     As the defendant has pointed out, with the creation of the Department
of Homeland Security, the USCS no longer exists. The functions and records that
are the subject of this action were transferred to the Bureau of Immigration and
Customs Enforcement ("ICE"). The defendant does not contend that the plaintiff
has sued the wrong entity, and the Court will use the term "agency" to refer to
either the former USCS or the ICE.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on ___7-25-05___



supporting memorandum. Plaintiff did not timely respond to the motion and, on December 9, 2004, the Court issued an order directing the plaintiff to show cause, within fifteen days, why the motion for summary judgment should not be granted. The order further provided that "[f]ailure of the Plaintiff to comply in a timely manner to this order will result in the granting of the pending motion and dismissal of this lawsuit with prejudice for failure to prosecute." 12/09/04 Order at 1. Because plaintiff did not respond to the order to show cause, the Court issued an order on January 3, 2005 dismissing the action with prejudice. Judgment was entered on January 5, 2005.

On January 10, 2005, the clerk docketed a letter from the plaintiff stating that he did not promptly receive the order to show cause and outlining the difficulties he faces in timely receiving his mail due to the fact that he works away from the address at which he receives mail. Although plaintiff plausibly demonstrated that he did not timely receive the order to show cause, he did not explain why he did not respond punctually to the summary judgment motion or why he did not seek an extension of time to answer the order to show cause. Thereafter, on January 25, 2005, plaintiff submitted a motion seeking reconsideration of the order of dismissal with prejudice. That motion reiterates the content of the plaintiff's January 10, 2005 letter and also asserts that, at some unspecified time after receipt of the order to show cause,

2

"plaintiff contacted the Clerk of the Court to request an extension of time of several days to file an answer, until January 10, 2005, as the answer had been completed, but was advised by the clerk that the January 03 order had been filed." Plaintiff also filed his response to the summary judgment motion on January 25, 2005. On February 7, 2005, defendant filed its response to plaintiff's motion for reconsideration.

As defendant has pointed out, Haney has offered no explanation for his failure to file a timely response to the summary judgment motion or to request an extension of the normal thirty-day period for filing a response. See Local Rule 7.2(a)(2). Although the court ordinarily would decline to afford relief because of the plaintiff's dilatory conduct, the Sixth Circuit has required district courts to be particularly solicitous when considering summary judgment motions in cases filed by pro se prisoners. Compare McKinnie v. Roadway Express, Inc., 341 F.3d 554, 558 (6th Cir. 2003) ("Plaintiffs also contend that the district court should have given them notice as to the requirements of Federal Civil Procedure Rule 56(e), as well as the consequences of failing to oppose Roadway's summary judgment motion. Ordinary civil litigants proceeding pro se, however, are not entitled to special treatment, including assistance in regards to responding to dispositive motions."); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988)(pro se defendants not entitled to special treatment

3

when responding to summary judgment motion; "When a person . . . chooses to represent himself, he should expect no special treatment which prefers him over others who are represented by attorneys.") with <u>United States v. Ninety-Three (93) Firearms</u>, 330 F.3d 414 (6th Cir. 2003) (suggesting that district courts are required to advise <u>pro se</u> prisoners of their responsibilities in responding to summary judgment motions). Although the plaintiff in this case was not a prisoner when the summary judgment motion was filed, he was incarcerated when he filed his complaint and, therefore, he may be entitled to the special solicitude the Sixth Circuit has required district courts to accord to prisoners in responding to summary judgment motions. <u>See</u> <u>Ninety-Three (93) Firearms</u>, 330 F.3d at 428 (suggesting that a litigant who was incarcerated when he filed his complaint may be entitled to special treatment even after his release). Accordingly, as plaintiff has now filed a substantive response to the summary judgment motion, the Court will exercise its discretion to GRANT the motion for reconsideration and VACATE the January 3, 2005 dismissal order and the judgment.

With respect to the substance of the defendant's summary judgment motion, summary judgment is appropriate "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citation omitted).

Under Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (same).[2]

---

[2]     Rule 56(e) sets forth in detail the evidentiary requirements applicable to a summary judgment motion:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to all the matters stated therein. Sworn or certified
(continued...)

A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"); Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (footnote omitted). The Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Liberty Lobby, 477 U.S. at 249. Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

In this case, the facts appear to be as follows:[3]

_____

[2]     (...continued)
copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

[3]     The Court's task is complicated by plaintiff's failure to comply with Local Rule 7.2(d)(3), which provides that "the opponent of a motion for summary
(continued...)

6

1.    By letter dated November 25, 2002, Plaintiff submitted his first FOIA/Privacy Act ("PA") request to the agency for records relating to him. Plaintiff's request was assigned the HQ FOIA Case No. 03-13657. (Declaration of Stephen B. Plitman, dated Oct. 26, 2004 ("Plitman Decl."), ¶ 5 & Ex. 1; Compl., ¶¶ 9, 11.)

2.    The plaintiff's first FOIA request was handled by the Information Disclosure Branch, Administration, Planning and Policy Division, Office of Investigations, of the former USCS, which is charged with the responsibility of responding to agency FOIA and/or PA requests. That section is currently known as the Information Disclosure Unit in the Mission Support Division of the Office of Investigations at ICE Headquarters ("HQ"). The former Information Disclosure Branch, and the current Information Disclosure Unit, are sometimes referred to as the "office." (Plitman Decl., ¶¶ 2-3.)

3.    By letter dated December 19, 2002, the office acknowledged receipt of the Plaintiff's first FOIA request dated November 25, 2002, advised him that his request would be processed in the order in which it had been received, and assured him that it would act with all due diligence by allocating the resources available to process his request as soon as possible. (Plitman Decl., ¶ 6 & Ex. 2.)[4]

4.    The office conducted a search to determine where any responsive records would be located. This search indicated that responsive records could be located at HQ or at the Office of the Resident Agent in Charge

---

[3]     (...continued)
judgment who disputes any of the material facts upon which the proponent has relied pursuant to subsection (2) above shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by affixing to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue." Nonetheless, the Court has attempted, by examining the text of the plaintiff's response and the documents submitted with the complaint, to discern the extent to which plaintiff is able to dispute the proposed factual findings submitted by defendant.

[4]     The verified complaint asserts that, "[b]y letter dated December 19, 2002, the USCS responded to the said FOIA demand, acknowledging and admitting that documents/files/records/electronically recorded conversations responsive to plaintiff's FOIA demand existed and were in the custody and control of the USCS." Compl., ¶ 10. In fact, the December 19, 2002 letter says no such thing.

7

("RAC") in Little Rock, Arkansas, which was, and is, under the territorial jurisdiction of the Special Agent in Charge ("SAC"), New Orleans, Louisiana. By letter dated January 15, 2003, the office provided Plaintiff nine pages of redacted records it determined were responsive to his request. The office redacted information pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(E). In addition, the office advised Plaintiff that if other records existed that were responsive to his request they would be located with the SAC, New Orleans. Finally, the office notified Plaintiff that it had forwarded a copy of his FOIA request to the SAC, New Orleans for a records search, disclosure determination, and direct response to the Plaintiff. The office advised Plaintiff of his right to appeal this initial response. (Plitman Decl., ¶ 7 & Ex. 3.)[5]

5.  By memorandum dated January 15, 2003, the office referred a copy of Plaintiff's FOIA request to the SAC, New Orleans for a records search, disclosure determination, and direct response to the requester. The office also referenced The Enforcement Communication System ("TECS") record LR13MJ91LR0005. (Plitman Decl., ¶ 8 & Ex. 4.)

6.  By letter dated December 10, 2002, Plaintiff submitted a second FOIA request to the agency HQ, wherein he requested access to records relating to his brother, Thomas Larry Haney. Plaintiff attached a signed "Certification of Identity" statement from his brother to the December 10, 2002 request. The office assigned Plaintiff's second FOIA the HQ FOIA Case No. 03-13666. After conducting a search for the location of responsive records, the office determined that, if any responsive records existed, they would be located at HQ or at the RAC, Little Rock, Arkansas, under the jurisdiction of the SAC, New Orleans, Louisiana. (Plitman Decl., ¶ 9 & Ex. 4A; Compl., ¶ 12 & 14.)

7.  By letter dated December 24, 2002, the office acknowledged receipt of Plaintiff's second FOIA request and again advised him that it would process his request in the order it had been received but would act with all due diligence by allocating the resources available to

---

[5]     Plaintiff's verified complaint, and his response to the summary judgment motion, do not specifically address this letter, although plaintiff does attach a copy of the letter to his response to the motion.

his request as soon as possible. (Plitman Dec., ¶ 10 & Ex. 5.)[6]

8.   By letter dated April 3, 2003, the office advised Plaintiff that it sent records responsive to his second request, dated December 10, 2002, directly to his brother, Thomas L. Haney. (Plitman Decl., ¶ 11 & Ex. 6.)

9.   By letter dated April 3, 2003, the office mailed five pages of redacted records to Plaintiff's brother that it determined were responsive to Plaintiff's second FOIA request. The office informed Plaintiff's brother that it had redacted information pursuant to FOIA exemptions (b)(2), (b)(7)(C), and (b)(7)(E) and advised him that if other records responsive to Plaintiff's second request existed, they would be located with the SAC, New Orleans. The office notified Plaintiff's brother that it had referred Plaintiff's second FOIA request (03-13666) to the SAC, New Orleans for a record search, disclosure determination, and direct response to Plaintiff's brother. (Plitman Decl., ¶ 11 & Ex. 6.)[7]

10.  By memorandum dated April 3, 2003, the office forwarded a copy of Plaintiff's second FOIA request to the SAC, New Orleans for a records search, disclosure determination, and direct response to Plaintiff's brother. The office also made reference to TECS record LR13MJ91LR0005. (Plitman Decl., ¶ 13 & Ex. 7.)

11.  By letter dated December 19, 2002, the Port Director, New Orleans, Louisiana, acknowledged receipt of Plaintiff's second FOIA request dated December 10, 2002. The Port Director advised Plaintiff that records responsive to his request might be located at the office of the SAC, New Orleans, Louisiana. The Port Director assigned this duplicate second request New Orleans, FOIA Case No. DIS-4-G: NO MJM. (Plitman Decl., ¶ 14 & Ex. 10.)

---

[6]   The verified complaint asserts that, "[b]y letter dated December 24, 2002, the USCS responded to the said FOIA demand regarding Thomas, acknowledging and admitting that documents/files/records/electronically recorded conversations responsive to plaintiff's FOIA demand regarding Thomas existed and were in the custody and control of the USCS." Compl., ¶ 13. This is a mischaracterization of the contents of the December 24, 2002 letter.

[7]   Plaintiff does not address these letters in his verified complaint or in his response to the summary judgment motion. It is not clear whether plaintiff has communicated with his brother concerning the letter that was sent directly to him.

12.   By memorandum dated December 19, 2002, the Port Director, New Orleans, Louisiana, advised the SAC, New Orleans, Louisiana that the SAC office may have records responsive to the Plaintiff's request. The Port Director referenced TECS record LR13MJ91LR005. (Plitman Decl., ¶ 15 & unnumbered ex.)

13.   By letter dated February 3, 2003, Plaintiff submitted another FOIA request to supplement his earlier FOIA requests. Specifically, he requested "a copy of USCS Case No. LR13MJ1LR005 file . . . and a copy of all reports, memos, files, report [sic] of investigation (whether approved or unapproved) regarding events occurring on July 02, 1001, involving U.S. Customs Agents Gary Warden and John Turner (in cooperation with DEA Special Agent Karen Farenbach) and alleged negotiations and telephone calls with either GARY HANEY and/or THOMAS L. HANEY." (Plitman Decl., ¶ 16 & Ex. 12; Compl., ¶ 15.)[8]

14.   By letter dated May 21, 2003, the SAC, New Orleans mailed to the Plaintiff five pages of redacted records it determined were responsive to Plaintiff's first FOIA request, FOIA Case No. 2003-11. The redactions were made pursuant to exemptions (b)(2) and (b)(7)(C) of the FOIA. The SAC, New Orleans found seven other records totaling nineteen (19) pages that were responsive to the Plaintiff's request. These records were withheld in their entirety pursuant to exemptions (b)(2), (b)(7)(C), and (b)(7)(E) of the FOIA. The response the SAC, New Orleans sent to Plaintiff did not address these records. (Plitman Decl., ¶ 17 & Ex. 13.)

15.   On May 21, 2003, the SAC, New Orleans mailed seven pages of redacted records it determined were responsive to Plaintiff's second and supplemental FOIA requests, under FOIA Case No. 2003-7. The SAC, New Orleans sent its response to the plaintiff's brother, Thomas Haney. In its response to Plaintiff, the SAC, New Orleans provided notice of Plaintiff's appeal rights. The SAC, New Orleans found seven other records totaling nineteen (19) pages that were responsive to the Plaintiff's request. These records were withheld in their

---

[8]   The complaint characterizes this third request as a limiting letter submitted in response to a request by the USCS that he narrow and limit the scope and extent of his FOIA requests. Compl., ¶ 15. Plaintiff has not submitted any documents supporting this characterization, and the defendant's summary judgment motion does not address this point.

entirety pursuant to exemptions (b)(2), (b)(7)(C), and (b)(7)(E) of the FOIA. The SAC, New Orleans' response did not address these documents. (Plitman Decl., ¶ 18 & Ex. 13.)[9]

16.   During the time that the SAC, New Orleans conducted its search for records responsive to the Plaintiff's request for records, the RAC, Little Rock, Arkansas found fifty-three (53) pages of handwritten notes taken from a review of audiotapes. At that time, the Research Specialist determined that the records were not responsive to the Plaintiff's request because he believed that the records related to other people. Recently, in a telephone conversation between the Program Analyst assigned to the case in the office and the research specialist who processed this case in the field, these 53 handwritten documents were discussed. During this conversation the Program Analyst from this office determined that the records were in fact responsive to the Plaintiff's request and made provisions to obtain, review, and process the records for disclosure to the Plaintiff. The documents have now been processed and will be sent by FEDEX to the Plaintiff on October 28, 2004. (Plitman Decl., ¶ 19.)[10]

17.   To date, the agency has not received an appeal of any of its responses to Plaintiff's FOIA requests. (Plitman Decl., ¶ 20.)

18.   In preparation for this litigation, the office contacted the agency's field office in Little Rock regarding its processing of the Plaintiff's FOIA requests. As a result of that contact, the field office in Little Rock forwarded an additional fifty-three (53) pages of records responsive to Plaintiff's request. Specifically, the field office forwarded summaries of taped discussions that took place between an agency Special Agent and various other individuals, including Plaintiff at times. Previously, the field office had

_____

[9]   The verified complaint and the response to the summary judgment motion do not mention either of the May 23, 2003 letters. It appears that plaintiff contends he did not receive either the April 3, 2003 letter or the May 21, 2003 letter, although he provides no argument that the defendant did not, in fact, mail the letters. It is not clear whether plaintiff also contends his brother did not receive either of those letters.

[10]   The plaintiff's response to the summary judgment motion does not state whether he, in fact, received these records.

11

incorrectly determined that these documents were not
responsive because it was not readily apparent that any
of the summaries related to discussions that took place
with Plaintiff. As a result of this oversight, the field
office in Little Rock did not process these pages as
responsive or forward them to HQ. Upon the office's
contact with the RAC office in Little Rock, however, the
Little Rock, Arkansas office once again examined its
files and upon this second examination determined that
the transcripts were at least partially responsive. As a
result of this discovery, the office in Little Rock
searched for any additional responsive records, including
copies of the tape recordings that the handwritten notes
summarized, but found none. The office in Little Rock has
assured the office that it has now forwarded all
materials it located that in any way related to
Plaintiff's request to the office. (Plitman Decl., ¶ 21.)

19.    The agency, upon receipt of each of Plaintiff's
FOIA requests, assigned FOIA case numbers, logged the
requests into an electronic FOIA database tracking
system, assigned program analysis to process the
requests, and reviewed and issued responses to the
requests. (Plitman Decl., ¶ 22.)

20.    In processing each of Plaintiff's requests, the
program analyst conducted internal searches for
responsive records by querying the Plaintiff's name and
other personal identifiers in TECS. TECS is a nationwide
law enforcement tool used to located investigative
records that could be responsive to a FOIA request. TECS
is also used to identify the existence and location of
other responsive records originating in or under the
control of one or more SAC Offices. (Plitman Decl., ¶
23.)

21.    Even though the HQ Office of Investigations,
Information Disclosure Unit's FOIA Program is
decentralized, this office renders guidance to the Office
of Investigations field offices, and supplements
personnel to assist in processing voluminous and time
sensitive disclosure cases. This office is responsible
for making an initial determination on disclosure of
specific records in TECS. The originating office that
opens an investigation is responsible for processing
records, such as reports of investigation and other
investigative information compiled for law enforcement
purposes, located within that office. If it is determined

that responsive records exist in other offices within the Office of Investigations, a copy of the FOIA request is referred to each office identified by TECS as having responsive records and that office is directed to conduct a search, make a determination on disclosure, and respond directly to the requester. (Plitman Decl., ¶ 24.)

22. With respect to the two FOIA requests Plaintiff submitted to HQ, the program analyst assigned to his FOIA requests queried TECS, located responsive documents, reviewed the documents for a determination of whether any exemptions were applicable, and responded to Plaintiff's request. Because TECS indicated that the agency office in Little Rock might have responsive records, the program analyst also referred the FOIA requests to the SAC, New Orleans Office, which oversaw the office in Little Rock, for a records search, disclosure determination, and direct response to Plaintiff and/or his brother. (Plitman Decl., ¶ 25.)

23. In response to Plaintiff's first and second FOIA requests, this office made a partial disclosure to both Plaintiff and his brother on January 15, 2003 and April 3, 2003, respectively. (Plitman Decl., ¶ 26.)

24. With respect to Plaintiff's FOIA request received by the Office of the Port Director, that office advised Plaintiff on December 19, 2002 that it was referring his request to the SAC, New Orleans. (Plitman Decl., ¶ 27.)

25. The SAC, New Orleans responses dated May 21, 2003 made a partial disclosure to Plaintiff and his brother in a collective response to FOIA requests filed by Plaintiff that had been referred to that office. (Plitman Decl., ¶ 28.)

26. With respect to the additional records that the agency's office in Little Rock recently determined were responsive to Plaintiff's FOIA requests, concurrent with this declaration, this office makes an additional release to Plaintiff of fifty-three (53) pages of redacted records. The redactions on those pages are made pursuant to FOIA exemptions (b)(7)(C) and (b)(7)(E). (Plitman Decl., ¶ 29.)

27. The records responsive to Plaintiff's request were reviewed page-by-page and line-by-line to ensure

that all non-exempt portions of the records could be
provided to Plaintiff. Based on that review, ICE has
provided Plaintiff with all portions of all records that
it believes were not otherwise exempt from disclosure
under FOIA. (Plitman Decl., ¶ 34.)

The Sixth Circuit has described the structure of the FOIA

as follows:

> The FOIA generally provides that every federal
> agency shall promptly make available upon request records
> reasonably described. 5 U.S.C. § 552(a)(3)(A). Under the
> Act, an agency may not withhold or limit the availability
> of any record, unless one of the FOIA's specific
> exceptions applies. Id. § 552(d). These exceptions are to
> be narrowly construed . . . and the burden is on the
> agency to justify its action. 5 U.S.C. § 552(a)(4)(B).

Rugiero v. United States Dep't of Justice, 257 F.3d 534, 543 (6th

Cir. 2001). This Court reviews denials of FOIA requests de novo. 5

U.S.C. § 552(a)(4)(B); Rugiero, 257 F.3d at 543.

In this case, the agency provided documents responsive to

plaintiff's FOIA requests by letters dated January 15, 2003 and May

21, 2003. Findings of Fact ("FF") 4, 14, 23. In addition, the

agency sent documents responsive to plaintiff's FOIA requests

directly to his brother by letters dated April 3, 2003 and May 21,

2003. FF 9, 15, 23. Likewise, a representative of the defendant

stated under oath that, during the course of this litigation,

additional documents that had not been previously identified in the

responses to plaintiff's FOIA requests would be produced by letter

dated October 28, 2004. FF 16, 18, 26.

Neither the verified complaint, nor plaintiff's response

to the summary judgment motion, clearly states whether he and his

14

brother received the documents transmitted on January 15, 2003; April 3, 2003; May 21, 2003; and October 28, 2004. The verified complaint asserts that plaintiff did not receive any of the documents requested in his third FOIA request dated February 3, 2003, Compl., ¶ 17, but does not state whether the agency responded to that request and does not address the responses to his two previous FOIA requests.

The response to the summary judgment motion, which plaintiff executed under penalty of perjury, is equally unilluminating. Plaintiff asserts, without elaboration, that "defendant failed to acknowledge the subsequently filed demand letters and provided to plaintiff no documents or files whatsoever regarding either plaintiff or Thomas Haney." Response to Summary Judgment Motion, filed Jan. 25, 2005 ("P. S.J. Br."), at 2; see also id. at 3. Later, however, plaintiff admits that he received the January 15, 2003 letter, id. at 5, but states that his subsequent requests have not been answered, id. Plaintiff does not specifically state whether he and his brother received the April 3, 2003 letter, whether his brother received the May 21, 2003 letter, or whether he received the October 28, 2004 letter. It appears that plaintiff denies receiving the May 21, 2003 letter addressed to him and which included five pages of redacted documents. Haney does

not, however, attempt to raise a triable issue of fact with respect
to whether that letter was properly mailed.[11]

Pursuant to 6 C.F.R. § 5.9(c) (2005), anyone who wishes
to seek judicial review under the FOIA must first appeal an adverse
determination within the agency. The January 15, 2003 and May 21,
2003 letters to the plaintiff, as well as the April 3, 2003 letter
directed to the plaintiff's brother, advised that,

> [i]nsofar as you may consider the deletions in the
> enclosed pages to constitute a partial denial of your
> request for disclosure, you may appeal such denial, in
> writing, within 35 days after the date of this
> notification to the Assistant Commissioner, Office of
> Regulations and Rulings, U.S. Customs Service, 1300
> Pennsylvania Avenue, NW, Washington, D.C. 20229.

Plitman Decl., Ex. 3; see also id., Exs. 6 & 13.[12] Neither
plaintiff, nor his brother, filed appeals with respect to the
letters dated January 15, 2003; April 3, 2003; or May 21, 2003. FF
17.[13] Plaintiff's failure to exhaust his administrative remedies

---

[11]    Plaintiff's response to the summary judgment motion also seeks to
rely on the allegations of the complaint and what it contends are admissions in
the defendant's answer. Contrary to plaintiff's assertion, the defendant's answer
did not "admit[] that it had neither provided any documents whatsoever to
plaintiff nor an explanation as to why no responsive documents had been provided
and that the time for defendant to properly respond had expired." Id. at 3. To
the contrary, the answer states that certain documents were mailed to plaintiff
and his brother in response to plaintiff's FOIA requests. Answer, ¶ 18.

[12]    The current appeal provision is set forth in 6 C.F.R. § 5.9(a)
(2005).

[13]    In his response to the summary judgment motion, plaintiff first
asserts that the complaint alleged that he exhausted his administrative remedies.
P. S.J. Br. at 3. Although ¶ 8 of the complaint alleges that the defendant's
failure to respond to the plaintiff's FOIA requests is tantamount to exhaustion,
see 5 U.S.C. § 552(a)(6)(C)(i), the Court has found that plaintiff has failed to
raise a triable issue of fact with respect to whether the defendant responded to
his FOIA requests.

(continued...)

with respect to any of his FOIA requests precludes him from obtaining relief in a federal court. <u>Hidalgo v. Federal Bureau of Investigation</u>, 344 F.3d 1256, 1258-60 (D.C. Cir. 2003); <u>Reisman v. Bullard</u>, No. 00-4286, 14 Fed. Appx. 377, 379 (6th Cir. June 20, 2001); <u>Taylor v. Appleton</u>, 30 F.3d 1365, 1367-70 (11th Cir. 1994); <u>United States v. Reed</u>, No. 94-5111, 1994 WL 524088, at *1 (6th Cir. Sept. 26, 1994).

The plaintiff's response to the summary judgment motion is so vague that it is impossible for the Court to ascertain the plaintiff's precise contentions. He has failed to raise a triable issue of fact with respect to whether the defendant did, in fact, respond to his three FOIA requests. Haney has also failed to raise a triable issue of fact with respect to whether he exhausted his administrative remedies. Under these circumstances, it is not necessary for the Court to consider whether the specific failures to disclose and redactions were in accordance with applicable law.

---

[13]   (...continued)
Plaintiff's response to the summary judgment motion also states as follows:

> [A] copy of said administrative appeal is appended hereto; in relevant part said appeal asserted that after having filed the FOIA request, which defendant acknowledged receiving, no further documents were received by plaintiff and plaintiff's further requests for a statement as to the status of his several FOIA requests went unanswered.

P. S.J. Br. at 3. Plaintiff has not attached a copy of any administrative appeal, and he also has not attached copies of any "further requests for a statement as to the status of his several FOIA requests." The response to the summary judgment motion does not state when and where the appeal was purportedly filed. It is, therefore, insufficient to create a triable issue of fact.

For all the foregoing reasons, the Court GRANTS the defendant's motion for summary judgment. The complaint is DISMISSED without prejudice to the plaintiff's right to refile in the event he properly exhausts his administrative remedies.

The Court must also consider whether plaintiff should be allowed to appeal this decision in forma pauperis, should he seek to do so. Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Fed. R. App. P. 24(a). See Callihan v. Schneider, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a) provides that if a party seeks pauper status on appeal, he must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. The same considerations that lead the Court to grant summary judgment for the defendant also compel the conclusion that an appeal would not be taken in good faith.

18

It is therefore CERTIFIED, Fed. R. App. P. 24(a), that any appeal in this matter by plaintiff is not taken in good faith. Leave to proceed on appeal _in forma pauperis_ is, therefore, DENIED. Accordingly, if plaintiff files a notice of appeal, he must also pay the full $255 appellate filing fee or file a motion to proceed _in forma pauperis_, accompanied by a supporting affidavit, in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 25ᵗʰ day of July, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 22 in
case 2:03-CV-02530 was distributed by fax, mail, or direct printing on
July 25, 2005 to the parties listed.

---

William W. Siler
U.S. ATTORNEY'S OFFICE
167 N. Main St.
Ste. 800
Memphis, TN 38103

Gary C. Haney
1502 Spinnwebber Cr.
Pocahontas, AR 72455

Honorable J. Breen
US DISTRICT COURT